Good morning, Your Honors. Good morning. Devlin Geddes on behalf of S Bar B Ranch, the plaintiff and appellant in this case. There's a number of issues presented in this case. I'm going to focus in on the summary judgment decision by the court because that obviously is the most impactful decision by the court. This appeal comes to the court from Omimex's motion for summary judgment on statute of limitations. In response, S Bar B Ranch presented significant evidence to establish material issues of disputed fact, which should have prevented entry of summary judgment. Instead of addressing the statute of limitations argument, however, the district court skipped that and focused in on the actual merits of the case. In particular, the district court decided as a matter of law that Montana is an at-the-well state under the implied duty to market natural gas. What was wrong with that? What was wrong with that decision? What was wrong with the district court making that determination? Certainly. Well, it's incorrect for two reasons. First of all, that wasn't the issue raised by Omimex in its motion for summary judgment, so the issue wasn't fully briefed or presented to the court. Secondly, the decision itself is just flat-out wrong. The Kravik decision by the Montana Supreme Court did not address the implied duty to market natural gas. Likewise, the Kravik decision was limited to— Well, let's just make something clear right in here. Now, though, you have briefed it, right? We have briefed it, yes. So we can look at the at-the-well. I mean, when we review a summary judgment, we can decide it on any grounds, legal grounds, that we feel are appropriate. It has been briefed at this point, so no one's surprised today, right? Today, we are not surprised. I agree. Now, respectfully, I believe that that decision should be made by the Montana Supreme Court because despite the district court's holding, Kravik has not addressed the issue presented in this case. Kravik was decided back in the 1960s. It involved intrastate leases. Actually, it was 1978. Oh, excuse me, 1970s. I apologize. It involved an intrastate lease, and that's unique from this situation because in Kravik, you have Montana Power Company actually enters into the lease with Kravik, produces the gas out of the ground, gathers the gas, compresses the gas, transport the gas to the market, and then eventually sells it to people like myself who buy the natural gas from now a different company but used to be called Montana Power Company. In that particular case, the court didn't have a market to look at. Counsel, if we disagree with you regarding the correctness of the district court's application of Kravik, do you lose? If you disagree with me, I lose. Okay. The point here is that Kravik decision... Everything hinges on at the well. Everything hinges... If at the well is the law, then everything else falls. If Montana is an at-the-well state, then yes, SBARB Ranch loses. That's the same argument that SBARB Ranch made at the district court level and the reason why class certification was appropriate. So when we're trying to apply state law, it is our responsibility to make our best guess as to how the state Supreme Court would resolve the issue. So why doesn't Kravik lead us to our educated guess that the Supreme Court would decide that Montana uses the at-the-well methodology? I do hope it's not a guess. We are... It's an educated guess. That's what we're supposed to do. We're supposed to take our best shot at how we think the Supreme Court would decide the issue. If you say that Kravik did not decide the issue, then we still can make our assumption or our prediction. We won't call it a guess. We'll call it a prediction as to how the Montana Supreme Court would rule. So why doesn't Kravik lead us, even if, as you say, it didn't address the identical issue, why doesn't Kravik lead us to a prediction that the Supreme Court would rule that at-the-well applies in Montana? I guess two ways to address that, Your Honor. First of all, Kravik does supply some guidance limited to intrastate leases, but if you actually delve into Kravik and look at the case, you'll see that the court is addressing these FPC price ceilings that used to apply to interstate sales of gas and it said that doesn't apply here. We have to look at something else. And then sets out some criteria for how to determine the market price of gas. Is there any indication in Montana law that a methodology other than the at-the-well rule  Yes, Your Honor. And that's the Christian versus AA oil case from 1973. That case addresses the minimum obligations of a natural gas lessee in Montana to produce natural gas. And along with all the other obligations, one of the obligations of a lessee is to actually get the gas to market. And in that case, the court said even if a lessee drills a well and successfully strikes gas, that the duty to market that gas doesn't end there. Instead, there is an obligation to get that gas to the market. Otherwise, the lease will expire. So a lessee could drill a successful well. If there's no pipeline hooked up to it, couldn't sell it, the lease would terminate and they would violate their duty to market that gas. So there is good Montana law that sets forth a paradigm by which the omics in this situation, the producer has an obligation to get that natural gas to the market pipeline. So I'm looking at the Christian versus AA oil.  Certainly. That you say would indicate that at the well is not the appropriate calculation for royalties. No, I'm not saying it says that specifically. That's what I was wondering. It doesn't say that specifically. On page 429 of the Montana site or 1374 of the Pacific second site, it says, and I'm going to paraphrase the introduction into it, even if the lessee drills a successful well on the lease property, if the lessee cannot sell the gas because there's no available pipeline facilities or no commercial market within the area, its rights under the mineral lease will expire after the reasonable period of time set forth. It doesn't talk about royalties at all, calculation of royalty payments at all. No, what it talks... I mean, that sort of seems like a duh. I mean, if you just had a well and there was no way to get it anywhere, what, you know, it doesn't do you any good. Exactly. But as Judge Rawlinson said, it doesn't say that that's how you calculate royalties. What that case does is that it is an extension of the implied duty to market gas. There is an obligation under the implied duty to market gas on the lessor, or excuse me, the lessee, to get that natural gas to the market. And the question that is raised across the country under this implied duty to market is who bears the obligation or who bears the expense associated with getting that gas to the market. The cases that are dropped at the market say that it's the lessee that bears it. Cases that are dropped at the well say it's a joint proportional sharing of the expense. Right, but how does that make Montana anything other than at the well? Montana is not an at-the-well case because Montana hasn't addressed the issue yet. This particular, the Kravik decision. So what do we do with the cases that have interpreted Kravik as articulating an at-the-well methodology? Do we disregard those cases, including a case from the state court, a state court in Montana? Well, the Rummel decision is not binding, obviously. But it informs our prediction. Certainly. The difficulty with the Rummel case is that going into that case, the two parties going in both said, Kravik applies, Your Honor, you have to fit Kravik into this situation, even though Kravik never once addressed the implied duty to market natural gas. What about the District Court of Utah? The District Court of Utah, Supreme Court in North Dakota have generally said Montana is an at-the-well state based upon the language in Kravik, certainly. However, Kravik, again, I repeat, did not address the implied duty to market natural gas. It was never raised by the parties because it was involving an intrastate lease. But it seems if everyone is interpreting the Montana Supreme Court wrongly, that would present an opportunity for someone to take one of these cases up to the Montana Supreme Court and have them straighten it out, and we simply don't see that. The difficulty with taking one of these cases to the Montana Supreme Court and straightening out is that for an individual plaintiff to do that, the amount of damages that an individual plaintiff would have sustained is insufficient to warrant going to the Montana Supreme Court. The only way that these cases across the country have been decided by Supreme Courts is through class action cases. All right. Thank you, Counsel. You've exceeded your time. We'll give you a minute for rebuttal. Thank you. Just a second. Good morning, Your Honors. May it please the Court? My name is Kimberly Beatty. I'm here on behalf of Almamex Canada. I will also address the issues that the appellant raised. As you heard here today, SBARB claims if the at-the-well rule applies, they lose. That's the exact same message that they gave to the district court in oral argument and at briefing before the district court. The district court properly then evaluated in... Let me back up. The other message that the appellant gave to the district court during oral argument is that the motion for summary judgment should be decided first before the motions to certify the class. The reason was quite simple, and that was because as the sole class representative, if the appellant's claims were time-barred, there was no class to certify and the case was over. So the district court had to turn its attention to the motion for summary judgment on statute of limitations and to the appellant's argument that the statute of limitations was told by Almamex's alleged fraudulent concealment of certain information to royalty owners. To reach that conclusion... But at this juncture, if we decided that at-the-well was the law, then we don't have to do the statute of limitations, do we? Correct, Your Honor, you do not. Or the class certification. Correct, because you have the concession both here this morning in the briefs to you... But sometimes people concede things they shouldn't. Well, I think that in this case the concession is legitimate. If the at-the-well rule applies, there are no breaches, there are no frauds, there was no concealment of deductions. Almamex did its calculations appropriately, and the royalty owners were paid appropriately. And so that's why I believe that the appellants are saying if the at-the-well rule applies, they lose, there's nothing left for them to do. Because there's no evidence in the record that there's anything wrong with the royalties except they're at-the-well, and that they claim they didn't know about it and all of that. Correct. There's nothing that if it is at-the-well, the royalties are correct. Correct. So, counsel, would you please address opposing counsel's attempts to distinguish Kravik and to say that we should not be persuaded that this case really articulated the at-the-well standard because that wasn't really the issue, that was before the court. Certainly, Your Honor. With all due respect to the appellants' counsel, I believe that is the issue that was raised in Kravik. Kravik was asked to determine an appropriate methodology to value gas, to provide a market value for gas. The Kravik decision clearly set forth three different methodologies to come up with the market value, each of which required an at-the-well determination. It was bringing the value of the gas back to what the value of that gas was at the wellhead. One of the methodologies was, is there indeed a sale at the wellhead? Well, in this case, Your Honors, there is a sale at the wellhead. There's an arm's-length transaction where Amamex sells the gas at the wellhead to third parties. The gas is then transported to a further downstream market, but the original sale of that gas occurs at the wellhead. So you have to then look at Kravik to determine which of those methodologies determines what that market price was. You also look at the contracts that Amamex has with its third parties to determine that market value and, therefore, to set the value that the royalties are calculated upon. Well, who in this instance was paying for the transportation? The purchasers of the gas purchased the gas. They also, if I'm remembering correctly, Your Honor, and it's been a while since I've looked at that fact, they also pay a charge for the transportation of it to get it to a further market. So the plaintiff can't claim that they were paying for something that they didn't get reimbursed for? If I understand your question correctly, Your Honor, that's correct. I mean, was the plaintiff incurring any costs in transportation here? No. So the Kravik case does clearly hold that Montana is an at-the-well state. The district court decision, the state district court decision in the Rommel case clearly recognized that, as well as sister courts have recognized the same. So what does the lease say? I'm sorry? What does the lease say about post-production expenses, how they're to be allocated between the buyer, leasor, and lessee? The leases themselves, there are a variety of different leases. There are 1,800 different leases. There are 39 or 40 different categories of lease language. The lease language varies. Do any of them talk about post-production? Some of them do, and some of them don't. And so that's generally why we have this issue of how you determine that value and what rule applies is because some of those leases are silent on that issue. If the lease said otherwise, then they would be entitled to those. If it's the post-production, they could contract contrary to that, correct? They could contract contrary to that, yes. But everyone here is where it's silent? It's either silent or it's market value at the well or some other methodology that fits within those CRAVIC decisions. Having properly found that CRAVIC, that the at-the-well rule applies, the district court also found that there's no fraudulent concealment and, therefore, no tolling of the statute of limitations. And so it determined that the appellants were on inquiry notice years ago, and that inquiry notice required them to conduct a reasonable investigation as to their claims, and they simply waited too long to bring their tort claims, and so those were time-barred. With respect to the breach of contract claims, then, the court, under Rule 56F, concluded that having found the substantive law of the state being the at-the-well rule state, that there was no concealment, there was no fraud, that there was no breach of contract, and it made that determination on a purely legal analysis of the applicable law. Well, what charges are OMMMEX required to disclose under Montana Code, Section 82-10-104? Your Honor, I have that. So under 82-10-104, Section 1 sets forth the types of information that's required to be provided to the royalty owner with their payment, and in Section 2, the statute requires that the payor specify by line item charges assessed against the royalty owner. In OMMMEX's case, it doesn't assess any charges in calculating the royalty, but for the taxes, and those taxes are disclosed on the royalty check form. So I guess the other issue that the appellant raised in his comments were that if this Court agrees with him that Kravick did not clearly address the at-the-well rule, then this case should be, or that question should be certified to the Montana Supreme Court so that the Montana Supreme Court can make that decision. Unfortunately for the appellant, that's not the status of how one gets a question certified to the Montana Supreme Court. First, the question has to be a question of unsettled law or first impression, and that's not what we have here. We have an interpretation, we have a clear interpretation under Kravick, and we have an appellant who wishes that interpretation were different. And that desire on the appellant's part for a different result does not justify certifying this case or this question to the Montana Supreme Court. I think the appellant's arguments that there are trends nationally for a different rule, that a different rule is the better approach, that the Kravick case is old and should be reconsidered, those are all public policy arguments that are best addressed to the Montana legislature, not to the Montana court and not to this court. Interestingly, in the 35 years since the Kravick decision has been issued, it has not been changed by any kind of legislative amendment. The statutes remain unchanged. There have been 19 sessions of our Montana legislature, and they have not seen fit to overrule or change the law of any kind that the Montana Supreme Court set forth. So the Montana Supreme Court has spoken in Kravick. The Montana legislature has spoken by their silence. There's no unsettled law here to certify any question to the Montana Supreme Court. The district court properly issued its orders granting summary judgment, denying as moot the motion to certify the class. It also properly declined to certify a question to the Montana Supreme Court, and it properly granted the motions for protective order that are also before you on this appeal. Thank you. Thank you, counsel. One minute for rebuttal. Thank you. The one sentence from Kravick that the court and other courts have relied upon to establish that Montana is an at-the-well state talks about when there's no market that exists in the field, that in the absence of unlawful suppression of price, royalty may be computed upon receipts from marketing outlets for the products less the cost of expenses for marketing and transportation. Two paragraphs above that, the court uses the word gathering, and it also talks about gas quality and processing. If the court truly allowed or intended to allow for producers to deduct for gathering and compressing the gas and processing the gas and getting it to the market, it would have put that language in there. We have no dispute that once you reach a market pipeline, that the expenses associated for marketing transportation to move that gas to other markets to increase its value are legitimate expenses that should be proportionally borne. But this case does not say that gathering from the well to that pipeline, compressing the gas to actually get it into that pipeline, are justifiable expenses that may be deducted under Montana law. All right. Thank you, counsel. Thank you. Thank you to both counsel. The case just argued is submitted for decision by the court. That completes our calendar for today, and we are in recess until 9 a.m. tomorrow morning. All rise. This court for this session is adjourned.
judges: Fernandez, Rawlinson, Callahan